Council, please approach. Howard Trapp for Defendant Appellant Nguyen. May it please the Court. $6,000 in the first opinion of this case, which I realize is not viable anymore, but nevertheless this Court, the different panel of this Court, made a mistake and said that $6,000 in cash was found in Apartment No. 9. It was not, and the Court seemed to rely very heavily on it, and I want to be sure that I can set the record straight on that. On page 334 of the transcript, a Customs officer testified, I also seen approximately $6,000 in cash that was inside of Bedroom No. 2, but on cross-examination on page 346 he said, Question, now you stated that you found cash in Bedroom No. 2. In that correct answer, I did not find any cash, no, and it's significant that the government never mentioned this cash in its brief as part of the evidence. But, Council, the problem is that the prior panel has already made the determination. Shouldn't you spend your time then on the issues that are now before us? Because we cannot revisit that. I'll finish with that. I just want to be sure that it is clear that there was testimony that there was $6,000, but it was retracted. There is no evidence that Khan, Khan Nguyen, knew what was in the parcel before she opened it. Hence, there was no evidence of concession of what they tend to distribute. Other than the clue spray and her presence in the apartment, there is no other evidence except for the fact that we had a license, a driver's license, which was in the hands of a certain person, who the driver's license had the same address as the parcel, and that particular person was then, the jury was advised that he was my client's brother. What was the significance of the clue spray? The significance of the clue spray was that the drugs were, sham drugs were replaced, and for the original drugs, clue spray was put around them. And so if someone was to open that part of the parcel that had the drugs in it, it would have clue spray. The fact that somebody opened the parcel, the fact that somebody had clue spray on their hands showed that they opened the parcel, and they opened that part of the parcel that had the drugs. But that's all it shows. It doesn't show that my client's. But couldn't an inference, couldn't a reasonable inference have been drawn of possession from that evidence alone? You could draw an inference that my client, therefore, opened the parcel, and you might even take it a little further and then actually handle the, I think the clue spray was on the very outside of the part of the parcel that contained the drugs, but nevertheless, it doesn't show in any way, shape, or form, that she knew what was in the parcel when she opened it. And that is the critical point that had to be proven to the jury, to show that she possessed these drugs with the intent to distribute them. But in order for us to follow your argument, don't we have to rule as a matter of law? Because if it goes to the try of fact, and the try of fact determines what inferences are reasonable from the evidence that is there, isn't that true? I think you have to rule as a matter of law that that evidence was insufficient for the jury to so find. And we made, of course, a Rule 29 motion. Of course, we're not asking you to retry the facts. So we have a situation where the most prejudicial evidence to show that my client knew what was in the parcel was the fact simply that this particular person who had the same address on his driver's license as was on the parcel was her brother, which is simply there was absolutely no showing of any communication between them regarding this. That was the only evidence that showed a relationship of any kind with the person who sent the parcel. It's pure guilt by association. So even if we think that there is some probative relevance to this particular evidence, under Rule 403, I suggest to the court that guilt by association has to equal unfair prejudice. All right. Thank you, counsel. Thank you very much. Your Honor, while I'm answering for Mrs. Vann, Your Honor, we joined with Mr. Trapp in regards to the issues in regards to the address on the package. The other issue in regards to Mrs. Vann is specifically in regards to her motion and request for a minimum or minor role reduction in this matter. The evidence in this case clearly shows that my client had went to the post office to receive the package, had discarded the wrapper, and then apparently the actions are is that Mr. Trapp's client opened the package, the package was open in her room, but there was no evidence that she even knew what was in the package. We would assert that there is a close familial relationship in regards to these parties and there's interchanging departments that are very close in proximity. It's very possible that my client never knew what was coming in, was in that package or knew what was actually going on. It's very simple for individuals to ask other family members to do them a favor. In regards to this case, Your Honor, there is more indicia or evidence that Ms. Vann and Mr. Vann were brothers and sisters and they might have had something or an arrangement going on. What is clear is that Ms. Vann was in the kitchen cooking at the time. She was not the one handling the package. She did not know when the package was open or when the package was breached or what was in the package. We would assert that the evidence... It was all of this evidence presented at trial that she didn't know what was in the package and she was in the kitchen cooking. Wasn't all that evidence presented at trial? Your Honor, that evidence was presented at trial. And the jury chose to disbelieve it. Well, Your Honor, that's the finding of their verdict in regards to this case. But it would clearly indicate that there would be insufficient evidence, we believe, that shows that Ms. Vann had no knowledge of what was inside that package. And in regards to that is the issue of whether she would be entitled to a minimal moral reduction. There's no doubt that she picked up the package. There's no doubt that she took off the package. But if she found what's in the package and it's not for her, wouldn't it make sense that she would give it to somebody or give it to somebody who's intended to? Obviously, if it's addressed to her and she opens it, it's not what she thinks it is, that it belongs to someone else. It is clear that, you know, but if it is intended to her, then she would keep it, wouldn't give it to somebody else to open up. Her options show that she did not intend or was not the intended recipient of this package, as indicated in her actions of just being in her apartment cooking while somebody else opens the package. The difficulty is the district court judge sat through the trial and heard all the evidence, was able to observe the demeanor of the witnesses as they testified. And we're looking at a cold record, and you're asking us kind of to second-guess the district court judge. Why should we do that in this case? Well, Your Honor, we believe that the facts – I have to also argue – So I'm also coming from a cold record, and it would indicate to me that these issues could have been brought up at trial and could have been reviewed and maybe addressed differently. And I guess on Mrs. Phan's behalf, I think that is an issue that I should bring to the court in her defense in this brief. Thank you, counsel. Would you like to reserve the balance of your time for rebuttal? Yes, Your Honor. Thank you. May it please the Court. Karen Johnson for the United States. Your Honor, you probably think the totality of the circumstances go to the jury, not just isolated facts. And indeed, with a view in the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements beyond a reasonable doubt. I think that clearly that is so. I'll address, if I may, because the Court, of course, is familiar with the record and the broad scope of the trial, the things that the counsel had raised specifically. Concerning Ms. Wynn, what we have is a man's gift set of cologne, aftershave, stiff deodorant, Yves Lorenz opium for men. It went to a woman. We're all familiar, of course, with these gift sets you get at Christmas. They're in plastic mold holding the bottles, and then the little plastic tray sits there, and the whole thing has a piece of plastic on it, and it's wrapped. The problem with Ms. Wynn is that she just didn't open the opium. She removed the tray, had to turn it over, and it was on the underside that the glue stick was, because it was on the underside of the inner tray that the ice had been attached to. And how would she not want to do that? How many of us, when we get Christmas presents, take it apart down to the plastic tray, take it out of its little case, and examine it? What was the date of the delivery? The date of the delivery, it came in on November 30th. They noticed the delivery, went out, and the same day, that was December 4th. And it was wrapped for Christmas wrapping? I think so. So substantially before Christmas it was open. Exactly. Of course, one could say one just couldn't wait. But nevertheless, it's one thing to open it. It's one thing to take apart the tray that it's in, and that's what she did. There was testimony that when the officers came to the door, they, of course, announced themselves, and they saw Ms. Phan in the background, and she ran into the bedrooms. They had to force the door, because no one would come to the door to open it. In the bathroom, they found two of the packages of ice in the toilet, as if one was going to flush it down, and the other three in the bathtub. Was that Ms. Phan? Her attorney said she was in the kitchen cooking. Well, I don't see that evidence. There were two apartments. Tina Nguyen was driving the car. She took Ms. Phan to the post office. They got an apartment or one block from the post office, but it took them 25 minutes to get home, because they engaged in the classic counter surveillance, at least when we have dope dealers picking up packages of ice. Drove around for 25 minutes, disposed of the package itself at the Guam Memorial Hospital, and then came home. Apartment number six is where the driver, Tina Nguyen, lived, and also Ms. Nguyen. Apartment number nine is where Ms. Phan lived. Ms. Phan and Ms. Nguyen were up in apartment number nine when this happened, and the testimony that I could read in the transcript is that Ms. Phan was not in the kitchen. They saw her out in the balcony, and she ran into the bedrooms when they hit the door. What porch record are you citing? You can get it, Ms. Johnson, but I don't think counsel suspects that this case is going to turn on whether she was in the kitchen or whether she was in the bedroom. I hope you don't suspect it's going to turn. Oh, no, Your Honor. But there was a question, and this is our statement of facts. I saw Phan by the back sliding door. But what part of the record are you referring to? It is volume one, page 146, and page 190 through 192, and 196. Okay. Great. Thank you. Yes. So the state of the gift, so to speak, rather speaks for itself. Concerning Ms. Phan, the Candy Lane address, under Rule 403 of the evidence, has to be unduly prejudicial, not, of course, go to the guilt of the defendant, but whether it would inflame the jury's passions or cause them to decide the case for some improper reason. We have to identify who the package came from, and, of course, trial counsel did that by calling the people who lived at the Candy Lane address. None of them knew the folks on Guam. None of them say it had anything to do with the package. But it's significant that her brother had a driver's license for that address. The theory of the trial was that this was a code, that when they saw that package with the Candy Lane address, they would know what it was and the fact that it had come from her brother in the state. But you're not citing to the excerpt of the record. You must be citing to the transcript itself. Yes, Your Honor. Is that what you're citing? Yes, indeed I am. On page 10 of the government's brief is where the cite to the transcript is. But I was asking for the cite to the record that you provided to us. Oh, I'm sorry. I don't think the counsel did that. I think he just cited to the transcripts. Okay. So you're saying that you're citing to something that you didn't provide to the court as the excerpt. I think so. Okay. Yes. Considering Ms. Phan also, in regard to Mr. Matanonia's evidence, there's more to her apartment than just the fact that the ice was in it. She had 132 baggies in one of the bedrooms. That is how ice is packaged on Guam, and that was the testimony at trial. Everything was consistent with drug dealers awaiting another shipment, ready to break it down, package it, and sell it. So those are the two points that I would raise concerning the evidence. Concerning the minimal participation or the minor participation of Ms. Phan, that is the defendant's burden of proof to show that she's entitled to that reduction, and I don't think it carried it. It would appear that you have an equal partnership between these two people and nothing to indicate to the contrary. Counsel, you concede, don't you, that the importation count should be remanded for re-sentencing? Oh, we already have, Your Honor. In a supplemental brief, we agreed with that re-sentencing on count 3 alone. If the court has no other questions. Thank you. Thank you. Rebuttal? To answer your question why we need to overrule the district court is because the district court was dead wrong. When they ruled in the June 29 motion, the district court was wrong when they let in the evidence to show that this person with the driver's license was the brother. The government got up before the jury and said, could not have said more than this to the jury. Look, this woman was in that apartment. She had flu spray on her hands. And that's it. That was all the evidence. And, oh, by the way, the person they argued that the person who sent it was her brother. Aha. So, therefore, she must be guilty. This should be reversed. Do you think they didn't know all the other circumstances? How about the detour from the post office? My client had nothing to do with the detour, Your Honor. Nothing to do with the detour. She wasn't in the car. She didn't pick up the package. There's nothing to connect her with the package at all except for this brother business. What about the fact that opposing counsel says she had to turn the package? Number one, it was open substantially before Christmas. And, number two, she had to turn over the tray containing the cosmetics or the skin products to get to it. Well, I have to say to that, Your Honor, so what? They have a package that's so big, you know, even if it's at the bottom, someone's going to wonder what's in it. No, but the thing is, what is the rule to us when we overturn the jury's verdict? What do we have to do? You have to say that the evidence of my client opening the package, turning it over, and finding something in the package was insufficient to sustain the verdict. As a matter of law. To take the case to the jury. To go to the jury, exactly. Because once it goes to the jury and the jury finds, then we must interpret in the light most favorable to the government, don't we? You have to take all the facts in the light most favorable to the government, but you have to decide whether or not our Rule 29 motion was correct. But I hope the Court will keep in mind that we had nothing to do with any of this other activity. All right. Thank you, Counsel. Thank you. Any rebuttal on behalf of the stand? Thank you, Your Honors. In regards to, I could not find the exact slide in regards to the kitchen, but there was in the government's brief here on page 10, Agent Duaneus and Agent Bloss saw a fan by the back sliding door where she ran towards the bedrooms out of their view. So she was not in there after the agents were making contact after the breach occurred. Thus, my client wasn't in the room when the breach occurred. She did not know what was going on. As indicated before, it appeared somewhere in the transcripts, and I wish I had the exact location of it, that she was in the kitchen cooking. All right. I'm sorry. Thank you, Counsel. Thank you to both Counsel for your arguments and for traveling here for the arguments. This case is submitted for decision by the court. The next case on calendar for argument is United States v. Shamblin. Thank you.
judges: Silverman, W. Fletcher, Rawlinson